UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAKIR DEVELOPMENT & CONSTRUCTION, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Cause No. 1:11-cv-1021-WTL-DKL ) |
| FLAHERTY & COLLINS CONSTRUCTION, INC., et al., | ) ) ) |
| Defendants. | ) |

## ENTRY REGARDING MOTION TO DISMISS AMENDED COMPLAINT

This cause is before the Court on the Defendants' motion to dismiss the Plaintiffs' amended complaint (dkt. no. 46). The motion is fully briefed and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the reasons set forth below.

## I. FACTS ALLEGED IN AMENDED COMPLAINT

The Plaintiffs allege the following facts in their amended complaint.

The Plaintiffs owned property in Noblesville, Indiana. In the course of lobbying the Plaintiffs to hire them to develop the property, the Defendants represented that they were experts in the business of development, construction, and management of apartment complexes and made the following statements:

- On or about February 2, 2006, Defendant David Flaherty made the following statements to Plaintiff Sohail Shakir: "We are experts in the apartment business. You have come to the right place. We are a one stop shop. We know how to develop, build and manage successfully and profitably." "We will ensure construction is completed within the loan amount. Your land value will be

- sufficient for your down payment. We will manage the property for you and you will have no headaches. Every month you will get a check for your profit and the accounting with it."

- Also on or about February 2, 2006, Defendant Jerry Collins made the following statement to Sohail Shakir: "Come with us in the morning, and we will show you several projects. We have the best management team. Our managers are the best trained. All projects have 90% plus occupancy. All the projects are generating positive cash flow for the owners. Look in our brochure, we have offices and projects in several states. We are the experts, we know how to complete and operate apartment projects extremely profitably for every one of our clients."

- On or about June 2, 2006, Defendant David Flaherty made the following statements to Sohail Shakir: "There is much better quality of materials, professional labor, and much higher class of finishings and furnishings. The club house will have a swimming pool, and also the club house will be of very high quality." "This is the right thing to do. Trust me. We have helped several people in the apartment business. You will be making cash profit of $400,000 to $600,000 per year, every year."

Relying on these and other statements by the Defendants, the Plaintiffs decided to contract with the Defendants for the development and construction of an apartment complex on the Noblesville property ("the Apartments"). The contract in question (hereinafter "the Construction Contract") was executed on September 7, 2006, by Plaintiff Sohail Shakir, in his capacity as "owner" of an entity called Cumberland Pointe, LLC, and by someone named Gordon Benner, in

his capacity as President of Defendant Flaherty & Collins Construction, Inc.

In May 2007, the Plaintiffs decided to enter into a second contract with the Defendants pursuant to which the Defendants would manage the Apartments ("the Management Contract"). The Management Contract was executed by Sohail Shakir on behalf of Plaintiff Cumberland Pointe Apartments, LLC, and Defendant David Flaherty on behalf of Defendant Flaherty & Collins, Inc. In deciding to execute the Management Contract, the Plaintiffs relied on additional statements and assurances by the Defendants, including a statement by David Flaherty that

> We have spent a lot of time on your project. Trust me, completing this project is the best thing for you. You will be getting a refund of your $750,000 from this loan. Also, you will be getting around $800,000 as developers' fees from this loan, and there is no cash equity required from you. The loan amount is higher because we will be using much higher quality labor and materials, finishings and furnishings. The project will have a very high quality clubhouse. This higher quality project will bring higher rents and higher profits.

The Plaintiffs allege that far from providing the services they promised, the Defendants "usurped, intercepted and diverted customers, customer accounts, vendor accounts, accounts receivable, rent payments, credit accounts, construction materials, and construction funds to other companies owned, controlled and managed by David M. Flaherty and Jerry K. Collins on a day to day basis." They further allege that Defendants David Flaherty and Jerry Collins "created a second set of books with inaccurate ledgers in connection with the development, construction, and management of the Apartments" and sent the "inaccurate, false and/or misleading ledgers" to the Plaintiffs each month. In addition:

- Upon information and belief, throughout the development, construction and management of the Apartments, David M. Flaherty and Jerry K. Collins accepted kickbacks from vendors, managers, employees, Flaherty

& Collins, Inc. and Flaherty & Collins Construction, Inc. in the form of equity, dividends and indirect compensation.

- Thus, on and after February 2006, Defendants Flaherty & Collins, Inc., Flaherty & Collins Construction, Inc., David M. Flaherty and Jerry K. Collins entered into, maintained, and performed upon an ongoing common plan and agreement to defraud, embezzle and convert millions of dollars belonging to the Plaintiffs; to intercept, usurp and divert assets away from the Plaintiffs and to competing non-related companies owned, managed and controlled by Defendants on a day to day basis; to embezzle construction funds by intentionally failing to complete the construction work in a substantial and workmanlike manner and pocketing the cost differential; to perform improper maintenance, to intercept, usurp and divert customers and potential tenants to competing apartments owned and managed by Defendants; to fraudulently induce Plaintiffs to execute contracts for construction and management of the properties; and to commit all illegal acts necessary to effectuate their scheme of fraud.

- Defendants Flaherty & Collins, Inc., Flaherty & Collins Construction, Inc., David M. Flaherty, and Jerry K. Collins, knowingly participated in the conduct alleged herein, and, in so doing, knowingly and substantially and intentionally performed substandard work that would delay and hinder the opening and filling of the Apartments with tenants; transferred or caused to be transferred funds out of Plaintiffs' accounts; worked against the HUD loan to negatively influence the potential loan portfolio and capitalization of the business and the Plaintiffs; made

false and misleading statements; altered documents; prevented capital contributions from being received by the Plaintiffs through Defendants' usurpation and conversion of the loan proceeds and quickly drawing down and draining the loan proceeds to facilitate the embezzlement.

The Plaintiffs allege that they have suffered damages in the millions of dollars as a result of the Defendants' actions.

## II. DISCUSSION

The Amended Complaint contains six counts; the Defendants move to dismiss each of them.

### A. Count I: Actual Fraud

Under Indiana law,

Actionable fraud consists of five elements: 1) the fraud feasor must have made at least one representation of past or existing fact; 2) which was false; 3) which the fraud feasor knew to be false or made with reckless disregard as to its truth or falsity; 4) upon which the plaintiff reasonably relied; 5) and which harmed the plaintiff.

*Scott v. Bodor, Inc.*, 571 N.E.2d 313, 319 (Ind. App. 1991) (citing *Edwards v. Hudson*, 14 N.E.2d 705, 706 (Ind. 1938); *Groves v. First National Bank*, 518 N.E.2d 819, 829-30 (Ind. App. 1988)). The Defendants argue that the Plaintiffs' fraud claim fails on the first element because all of the statements the Plaintiffs point to constituted only statements of opinion or promises of future performance. The Defendants are correct with regard to most of the statements the Plaintiffs allege were made to induce them to enter into and remain in business with the Defendants–most of them are simply promises or predictions regarding future performance or opinions contained in sales pitches, neither of which can support a claim for fraud. *See, e.g.,*

5

*R.R.S. II Enters., Inc. v. Regency Assocs.*, 646 N.E.2d 56, 59 (Ind. App. 1995) (quoting *Sachs v. Blewett*, 185 N.E. 856 (1933)) ("'[F]raud cannot be predicated upon a promise to do a thing in the future although there may be no intention of fulfilling the promise.'"); *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30-31 (Ind. App. 2005) (quoting *Security Trust Co. v. O'Hair*, 197 N.E. 694, 696 (1935) (in turn quoting *Shade v. Creviston*, 93 Ind. 591 (1884)) ("Expressions of opinion cannot be the basis for an action in fraud. 'The general rule is that statements of value are regarded as mere expressions of opinion.'").

However, in addition to these non-actionable statements, the Plaintiffs allege that the Defendants created a second set of books and repeatedly misrepresented the finances of the project, inducing the Plaintiffs to continue to conduct business with them, including entering into the Management Contract. These misrepresentations do support a fraud claim. And while the Defendants argue that the Plaintiffs have not satisfied the heightened pleading requirement under Federal Rule of Civil Procedure 9(b) with regard to this claim, they are incorrect: the Plaintiffs have supplied the "who, what, when, where, and how" with regard to their "cooked books" allegation, and therefore they have satisfied their pleading burden. *See Wigod v. Wells Fargo Bank, N.A.*, 673 N.E.2d 547, 569 (7th Cir. 2012) (setting out Rule 9(b) pleading standard). The Defendants clearly are on notice regarding what they are being accused of and how their alleged misdeeds constitute fraud. Accordingly, the motion to dismiss Count I is **DENIED**.

## B. Count II: Criminal Deception

Under Indiana law, a person who "knowingly or intentionally makes a false or misleading written statement with intent to obtain property" commits the crime of deception. Ind. Code 35-43-5-3(a)(2). If the allegations contained in the Amended Complaint are true, the

6

Defendants did just that–they made false statements each month with regard to the finances of the building project and the Apartments with the intent of obtaining money from the Plaintiffs that they would not have obtained had they made the Plaintiffs aware of the true facts. The motion to dismiss Count II therefore is **DENIED**.

## C. Count III: Constructive Fraud

Under Indiana law, a claim for constructive fraud requires the following:

(1) a duty existing by virtue of the relationship between the parties;

(2) a violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists;

(3) reliance thereon by the complaining party;

(4) injury to the complaining party as a proximate result of that reliance; and

(5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Kreighbaum v. First Nat'l Bank & Trust,* 776 N.E.2d 413, 421 (Ind. App. 2002). The Defendants argue that the constructive fraud claim fails in this case because the Plaintiffs' allegations do not support the existence of a duty that arose by virtue of the relationship between the parties. The Plaintiffs argue that the requisite relationship existed in this case because the Defendants held themselves out as experts in the construction and apartment management fields.

Regardless of whether the requisite relationship exists in this case, such a relationship does not make statements of opinion and statements regarding future performance actionable. In other words, even if the Plaintiffs have satisfied the first element of a constructive fraud claim, they have not satisfied the second. The cases cited by the Plaintiffs do not help them; in those cases, the statements in question were misstatements of law, which are statements of present

fact–e.g., the tax code permits this deduction to be taken–but nonetheless ordinarily cannot support a claim of fraud because "everyone is presumed to know the law and therefore, the allegedly defrauded party cannot justifiably have relied on the misstatements." *American United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 703 (Ind. App. 2004) (citing *Scott*, 571 N.E.2d at 319).[1] The holding of *Scott* and *Douglas* is that the exception to that general rule for misstatements of law made by an attorney or someone professing knowledge in legal matters is applicable not only to attorneys, but to anyone who claims a special knowledge or expertise in the law. This holding is inapplicable to this case, which does not involve any misstatements of law.

As previously discussed, the false financial statements alleged by the Plaintiffs were statements of existing fact and therefore do support a claim of actual fraud. The difference between actual fraud and constructive fraud is the intent element; actual fraud requires an intent to defraud, while constructive fraud does not. In this case, the Plaintiffs unequivocally allege that the Defendants created two separate sets of books and provided the false set to the Plaintiffs. These allegations are not consistent with a claim of constructive fraud–that is, fraud without the intent to defraud. Rather, if the facts alleged by the Plaintiffs are true, actual fraud, not constructive fraud, occurred. The Plaintiffs have not pointed to any other statements or omissions that would support a constructive fraud claim. Accordingly, the motion to dismiss

---

[1] The Plaintiffs incorrectly cite *Captain & Co. v. Stenberg*, 505 N.E.2d 88 (Ind. App. 1987), for the proposition that opinions expressed by a party claiming special expertise or knowledge can constitute fraud. To the contrary, the court in that case reaffirmed the principle that opinions cannot be the basis for a fraud action, but found that the defendant had made some statements of fact and that the plaintiffs had the right to rely upon those statements because the defendants had expertise that the plaintiffs did not.

Count III is **GRANTED**.

### D. Remaining Counts

In Counts IV through VI, the Plaintiffs assert claims for breach of contract, promissory estoppel, and unjust enrichment. To the extent that the breach of contract claim arises out of the Construction Agreement, the Defendants correctly note that none of the Plaintiffs were a party to that contract, and the Plaintiffs have not articulated any legal theory under which they can nonetheless recover for its breach. Therefore, the motion to dismiss is **GRANTED** with regard to the claim for breach of the Construction Agreement. However, Plaintiff Cumberland Pointe Apartments, LLC, is a party to the Management Agreement and has adequately asserted a claim for breach of that contract.[2] Further, the Plaintiffs also have satisfied the notice pleading requirement for their alternative claims of unjust enrichment and promissory estoppel based on the oral promises made by the Defendants. Therefore the motion to dismiss is **DENIED** with regard to the remaining claims in Counts IV, V, and VI.

### III. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED** with regard to Count III and the claim for breach of the Construction Agreement contained in Count IV. The motion is **DENIED** in all other respects.

SO ORDERED: 06/15/2012

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[2] The Plaintiffs have been far from precise in delineating which Plaintiffs are asserting which claims against which Defendants, but the lack of precision has no practical effect at this point in the case.

Copies to all counsel of record via electronic notification.